United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Charite Francois, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-22528-Civ-Scola |
| | ) |
| Mazyer Hatami and others, | ) |
| Defendants. | ) |

### Order on Motion to Dismiss

This matter is before the Court on the Defendants' motion to dismiss. (ECF No. 13.) The Plaintiff filed a response, opposing the motion and requesting leave to amend should the Court grant the motion. (ECF No. 16.) The Defendants filed a reply brief in support of their motion. (ECF No. 21.) After careful consideration of the parties' briefs and the relevant legal authorities, the Court **grants** the Defendants' motion to dismiss. (**ECF No. 13**.)

1. **Background**

Around the end of May 2016, Mazyer Hatami offered to sell a vessel to Charite Francois. (ECF No. 1-1 at ¶ 10.) Francois wanted a vessel to do business between Florida and Haiti. (ECF No. 1-1 at ¶ 31.) Hatami provided Francois with information about and access to the vessel, and he gained Francois's trust through frequent meetings and discussions. (*Id.* at ¶¶ 9, 13.) Hatami made representations to Francois about the vessel's condition, operability, and title, as well as his intentions to perform additional work on the vessel. (*Id.* at ¶ 10.)

On May 31, 2016, Hatami and ATM Shipping Corp. (a now-dissolved corporation that was owned and controlled by Hatami) entered into a contract for the sale of the vessel, the *M/V Hope II*. (*Id.* at ¶¶ 3–4, 12, Ex. A.) Francois paid $180,000 and promised to later pay an additional $70,000—a total purchase price of $250,000. (*Id.*) Almost a year later, the agreement was orally modified. (*Id.* at ¶ 12.) The parties agreed to reduce the sale price to $240,000, due to the Defendants' failure to perform repairs, and the parties agreed that Francois would pay another $15,000 immediately and pay the remaining balance at a rate of $2,000 a month. (*Id.*) It appears that this oral agreement was reduced to writing on May 31, 2017 (the "Addendum"). (ECF No. 13-2.)

The original contract stated that the *M/V Hope II* was sold without any warranty and "as is, where is," although ATM Shipping promised to deliver the vessel with "all mechanical systems running[.]" (ECF No. 1-1 at Ex. A.)

However, the Addendum superseded the previous contract and reiterated that the *M/V Hope II* was sold "as is, where is," with no warranties. (ECF No. 13-2.) The Addendum added that ATM Shipping had no responsibility to make any repairs to the vessel or render any services to it. (*Id.*)

While some figuratively muse that a boat is no more than a hole in the water, Francois alleges that the vessel he bought was "essentially worthless." (ECF No. 1-1 at ¶ 43.) Nearly four years later, Francois filed a lawsuit in Florida state court against three defendants (Hatami, ATM Shipping, and an unnamed John Doe), alleging eight claims: (1) fraud in the inducement, (2) violation of Florida Stat. 895.03 ("Florida RICO"), (3) violation of Florida Stat. 772.103 (the Civil Remedies for Criminal Practices Act), (4) violation of 18 U.S.C. §§ 1961 *et seq.* ("RICO"), (5) conspiracy to commit fraud, (6) unjust enrichment, (7) money had and received, and (8) recission for mutual mistake. (*See* ECF No. 1-1.) The Defendants removed the action to federal court in July 2021 and filed the instant motion to dismiss on August 6, 2021.

### 2. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But the plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance:

> In considering a motion to dismiss, a court should (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s],

which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted). "This is a stricter standard than the Supreme Court described in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)[.]'" *Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010).

Where a cause of action sounds in fraud or mistake, Rule 9(b) must also be satisfied. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, "may be alleged generally." Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted). Thus, the Rule's "particularity" requirement is not satisfied by "conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *Id.* To meet this standard, the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and way the statements misled the plaintiff; and what the defendant gained through the alleged fraud. *See id.*

With these standards in mind, the Court turns to the Plaintiff's complaint to see whether the claims are sufficiently alleged to withstand dismissal.

### 3. Discussion

#### A. Federal and State Racketeering Claims

The Plaintiff alleged claims under 18 U.S.C. §§ 1961 *et seq.*, Florida Stat. 895.03, and Florida Stat. 772.03 (the "RICO Claims"). To sufficiently allege a RICO claim, a plaintiff must plead "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002) (citing 18 U.S.C. §§ 1962(a)-(c)).[1]

---

[1] Florida Stat. 895.03 and Florida Stat. 772.103 are both interpreted in accordance with federal RICO law. *See Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) ("[T]he

First, Francois's RICO Claims fail to allege a pattern of racketeering. To allege a pattern of racketeering, plaintiffs must allege that (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson*, 372 F.3d at 1264. Francois only alleges one predicate act—that the Defendants "defrauded the Plaintiff" and took his money "under false pretenses . . . without following through with their obligations under the purchase agreements" in connection with the sale of the *M/V Hope II*. (ECF No. 1-1 at ¶¶ 20, 26, 34.) Francois asserts that he pled a second predicate act, gesturing to a vague allegation that the Defendants "purported to sell vessels, vehicles, and marine services . . . and abscond[ed] with the purchaser's money" on other unspecified occasions. (*Id.*) Francois promises that discovery will "uncover[]" and "reveal" further details and additional predicate acts. (ECF No. 16 at 5–6 & n.1.) However, "RICO should be a vehicle to right a wrong, not to find one." *Delfrate v. Letts*, No. 95-185-CIV-T-17, 1996 WL 420880, at *21 (M.D. Fla. Mar. 25, 1996) (cleaned up). Without alleging the "who, when, where, how, and why" of multiple predicate acts, a defendant has no notice of the claims against it and RICO is turned into a fishing pole rather than a tool for "fighting crime." *Id.* at *14; *Sedima v. Imrex Co.*, 473 U.S. 479, 498 (1985).

Second, Francois's RICO Claims further fail because he does not allege a "continuing" racketeering activity. *See Jackson*, 372 F.3d at 1264. The "continuity" requirement can be alleged as either "open-ended continuity" or "closed-ended continuity." *Id.* at 1265 (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241–42 (1989)). "Open-ended continuity" exists where the alleged racketeering acts have a "specific threat of repetition extending indefinitely into the future" or are otherwise the defendants' "regular way of doing business," while "closed-ended continuity" exists where the alleged acts extended over a "substantial period of time." *Jackson*, 372 F.3d at 1265–66 (citing *HJ, Inc.*, 492 U.S. at 241–42).

Francois argues that he alleged open-ended continuity, meaning that the racketeering relates to "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 1265; (ECF No. 16 at 5–6.) However, Francois's claim rests on one act (the sale of the *M/V Hope II*), and one incident, without more, cannot support a finding that alleged racketeering activity is "continuing." *See Jackson*, 372 F.3d at 1267–68 (holding that

---

analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims."); *see also Johnson Enters. of Jacksonville v. FPL Grp.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998) (noting that the Florida RICO statute "basically tracks" the "key provisions" of the federal RICO statute).

plaintiffs must show that the illegal acts had a "threat of repetition" or were "part of the defendants' regular way of doing business" and that vague assertions regarding threats of continued criminal activity are not adequate); *Ferrell v. Durbin*, 311 F. App'x 253, 258 (11th Cir. 2009) (holding that an accomplished "single scheme" is not enough to allege continuity under RICO).[2]

Last, Francois does not sufficiently plead an "enterprise" under RICO. Under 18 U.S.C. § 1961(4), an "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4). The "enterprise" is the "vehicle through which unlawful activity is committed." *Cedric Kushner Proms., Ltd. v. King*, 533 U.S. 158, 164 (2001) (cleaned up). Essentially, a RICO enterprise exists "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." *Jackson*, 372 at 1264 (quoting *United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984)). Moreover, a RICO enterprise "cannot be a group simply conspiring to commit a fraud"; rather, the enterprise must exist "separate from the alleged unlawful conspiracy." *Millette v. DEK Techs., Inc.*, No. 08-60639-CV, 2008 WL 5054741, at *4 (S.D. Fla. Nov. 25, 2008) (Cohn, J.). Here, Francois pled only that the Defendants associated "to perpetrate a fraud" on the Plaintiff. (ECF No. 1-1 at ¶¶ 3–5, 25–26, 32–34.) There are no allegations, beyond conclusory pleadings, of an enterprise that existed among the Defendants for a reason beyond the perpetration of a fraud on the Plaintiff.

Absent non-conclusory allegations regarding the existence of an enterprise and a pattern of racketeering, the Plaintiff fails to state a claim as to Counts II, III, and IV.

### B. Fraud in the Inducement

The Plaintiff's claim for fraud in the inducement requires pleading that (1) the defendant made a false statement concerning a material fact, (2) the defendant knew that the statement was false, (3) the defendant intended that the statement induce another to act on it, and (4) there was a consequent injury by the party acting in reliance on the representation. *See Moriber v. Dreiling*, 194 So.3d 369, 373 (Fla. 3d DCA 2016); *Geico Gen. Ins. Co. v. Hoy*, 136 So.3d 647, 651 (Fla. 2d DCA 2013). As this claim sounds in fraud, Francois must meet the heightened pleading standard of Rule 9(b) and must

---

[2] To the extent that the Plaintiff also argues that he alleged closed-ended continuity, this also fails, as the Plaintiff alleged facts relating to only one scheme with one victim in a limited time frame. *See Ferrell*, 311 F. App'x at 256 (holding that "[g]iven the scant allegations, the limited time frame, the single scheme and the existence of only two victims," the plaintiff failed to allege closed-ended continuity).

allege "precisely what statements were made," "the time and place of each such statement and the person responsible for making [it]," the "content of such statements and the manner in which they misled the plaintiff," and "what the defendants obtained as a consequence of the fraud." *Durden v. Citicorp Trust Bank, FSB*, No. 3:07-cv-974-J-33JRK, 2008 WL 2098040, at *13–14 (M.D. Fla. May 16, 2008).

First, the Plaintiff has not identified with specificity what representations were made. Francois only alleges vague statements "as to the vessel[']s condition, the operability of its engines, the title to the vessel, the work which the Defendant Hatami agreed to undertake in order to make the vessel seaworthy, and his intentions to deliver the vessel in working order and good condition." (ECF No. 1-1 at ¶ 10.) These contentions fail to allege "precisely" the "content" of the statements that the Plaintiff alleges were made. *See Durden*, 2008 WL 2098040, at *13–14.

Second, Francois has not adequately pled reliance on the alleged statements. Indeed, a plaintiff "cannot justifiably rely on representations that explicitly contradict provisions in a subsequently drafted contract." *Colite Int'l v. Robert L. Lipton, Inc.*, No. 05-60046-Civ, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006). The parties executed the initial agreement on May 31, 2016, at about which time the Plaintiff alleges that the Defendant Hatami made the statements at issue. (ECF No. 1-1 at ¶¶ 10–12.) However, on May 31, 2017, the parties executed the Addendum, which specified that "Buyer now accepts the vessel as is where is, in its current state and condition" and that Hatami had no responsibility to perform repairs. (ECF No. 13-2.)[3] Therefore, Francois cannot have relied on Hatami's representations concerning the state of the vessel and the work that he would perform on it in May 2016, as those representations are expressly contradicted by the later-executed Addendum. *See Colite Int'l*, 2006 WL 8431505, at *12.

In total, Francois has not stated a claim for fraud in the inducement.

### C. Conspiracy to Commit Fraud

A claim for conspiracy to commit fraud requires the plaintiff to allege (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) damage to the plaintiff as a result of the act performed. *See*

---

[3] The Court can consider the Addendum, even though the Plaintiff did not attach it to his complaint, as it is part of the contract referred to in the complaint, it is central to the claims at issue, the Plaintiff has not disputed its contents, and the Defendants attached it to their motion to dismiss. *See Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1312 (S.D. Fla. 2020).

*Gilison v. Flagler Bank*, 303 So.3d 999, 1004 (Fla. 4th DCA 2020). Moreover, the Plaintiff must meet Rule 9(b)'s heightened pleading standard. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (holding that plaintiffs must satisfy the requirements of Rule 9(b) when pleading a conspiracy to defraud).

      First, Francois did not adequately plead an agreement between two or more parties. As an initial matter, an agent "cannot conspire with his or her corporate principal or employer because a conspiracy requires at least two actors, and a corporation is a single entity that can only act through its agents, officers, and employees." *Wyndham Vacation Ownership, Inc. v. Gallagher*, No. 6:19-cv-00476-GAP-EJK, 2019 WL 5458815, at *28–29 (M.D. Fla. Sept. 10, 2019). Francois alleges that Defendant ATM Shipping Corp. is "owned and controlled" by Defendant Hatami (ECF No. 1-1 at ¶¶ 3–4), and therefore, the Court holds that these Defendants cannot conspire together.[4] Moreover, the Court holds that use of the Plaintiff's unnamed "John Doe" Defendant does not sufficiently allege a conspiracy. The Plaintiff has not alleged what role the John Doe Defendant had in the alleged conspiracy, nor does the Plaintiff allege what acts the John Doe Defendant took. Rather, all meaningful allegations pertain only to the named Defendants. (*See* ECF No. 1-1 at ¶¶ 9–11, 32–34.) Absent allegations concerning what role the John Doe Defendant had and what actions he took, the Court cannot find a conspiracy based only on a named individual, his corporate entity, and an unnamed John Doe. *Cf. Local Acceptance Co. v. Doe*, 962 F. Supp. 1495, 1497 (S.D. Fla. 1997) (King, J.) (dismissing a complaint and holding that a Doe conspiracy defendant was only maintainable where the John Doe was "known to other parties named in or otherwise deeply involved in the lawsuit").

      Second, Francois did not allege an "unlawful act" or a "lawful act by unlawful means." Francois alleges that the Defendants "conspired to defraud" him by selling a "worthless vessel." (ECF No. 1-1 at ¶ 42.) However, the Plaintiff contractually agreed with the Defendants that sale of the vessel would be "as is, where is" and that the Defendants would be "no longer responsible for rendering any services to the vessel nor make any improvements to the vessel." (ECF No. 13-2.) Thus, sale of a worthless vessel is not an unlawful act, and Francois has not alleged that the Addendum was negotiated or executed through unlawful means. And to the extent that Francois argues that the

---

[4] The Plaintiff argues that an exception to this general rule exists where an individual has "an independent personal stake, apart from that of the corporation, in achieving the object of the conspiracy." (ECF No. 16 at 9–10 (quoting *Greenberg v. Mount Sinai Med. Ctr.*, 629 So.2d 252, 256 (Fla. 3rd DCA 1994).) However, the Plaintiff fails to point to any personal interest Hatami had separate from ATM Shipping.

Defendants breached the contract (*see* ECF No. 16 at 3–4; ECF No. 1-1 at ¶ 20), a breach of contract is not a wrong or unlawful act cognizable under civil conspiracy. *See Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1318 (S.D. Fla. 2014) (Bloom, J.) ("[T]o construe a mere breach of contract claim as a 'wrong' or 'unlawful act' in substantiating a civil conspiracy claim would be inconsistent with the fundamental division between contract and tort actions."); *Nat. Chem. L.P. v. Orenda Techs., Inc.*, No. 6:13-cv-1607, 2014 WL 3385046, at *8 (M.D. Fla. July 8, 2014) ("Breaching a contract is not, by itself, unlawful. It is simply a failure to perform as one agreed to perform.").

Last, Francois has not pled with particularity any overt act. An overt act is an act "done in pursuance of the conspiracy." *McElrath v. ABN AMRO Mortg. Grp., Inc.*, No. 11-62216-Civ, 2012 WL 463893, at *6 (S.D. Fla. Feb. 13, 2012) (Cohn, J.). Therefore, the act must be in furtherance of the conspiracy and not merely be the conspiracy itself. *Cf. United States v. Pomranz*, 43 F.3d 156, 160 (5th Cir. 1995) ("An overt act, is an act performed to effect the object of a conspiracy, although it remains separate and distinct from the conspiracy itself."). Here, Francois alleges that the overt acts include "verbal and written misrepresentations, along with the execution of the sales agreement." (ECF No. 16 at 10.) However, for the reasons discussed above, Francois does not allege with particularity the verbal misrepresentations; therefore, those cannot constitute an overt act. *See supra* Section 3.B. Moreover, Francois does not identify to which written misrepresentations he refers—to the extent he refers to the written contract, the execution of the fraudulent contract is the conspiracy that Francois alleges. (ECF No. 1-1 at ¶ 42); *McElrath*, 2012 WL 463893, at *6 (holding that the plaintiffs failed to allege an overt act, as while the plaintiffs pled that one defendant obtained notes and mortgages in furtherance of a conspiracy to commit fraud, the obtaining of notes and mortgages did not suffice to allege an overt act separate from the conspiracy itself). Therefore, the execution of the contract is not an act separate from the conspiracy itself; rather, that is the alleged conspiracy.

For these reasons, the Court holds that Francois failed to adequately allege a conspiracy to commit fraud.

### D. Unjust Enrichment and Money Had and Received

The elements for unjust enrichment and money had and received under Florida law are the same—a plaintiff must allege that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained that benefit, and (3) "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomms.*,

*Inc.*, 275 F.R.D. 638, 646 (M.D. Fla. 2011). Unjust enrichment and money had and received are largely "different names for the same remedy." *Stock Fraud Prevention, Inc. v. Stock News Info, LLC*, No. 11-80764-CIV, 2012 WL 664381, at *10 (S.D. Fla. Feb. 28, 2012) (Marra, J.).

As a general matter, the existence of an express contract precludes recovery under unjust enrichment and money had and received. *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1369–70 (S.D. Fla. 2007) (Cohn, J.). Yet the Plaintiff also correctly points out that plaintiffs can plead in the alternative and that "[u]ntil an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature." *Stock Fraud*, 2012 WL 664381, at *10 (quoting *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. Dist. Ct. App. 1998)); *see also Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000). However, Francois does not plead inconsistent yet alternative forms of relief, as in the cases cited above. Francois brings no claim for breach of contract in the alternative. Rather, Francois affirmatively alleges that a contract exists and attached it to his complaint. (ECF No. 1-1 at ¶ 12, Ex. A); *see also Berry*, 497 F. Supp. 3d at 1369. Therefore, the Court finds that Francois has alleged that a contract exists, does not ask the Court to imply a contractual term that does not otherwise exist, and does not seek inconsistent, alternative relief in a manner that would permit alleging these claims in this situation.[5] Therefore, the Court holds that Francois has not adequately stated claims for unjust enrichment and money had and received.

### E. Recission

Francois's last count is a claim for recission based on mutual mistake— namely, the alleged mutual mistake that all parties believed that the Defendant ATM Shipping was the "owner of the vessel free and clear, which it was not." (ECF No. 1-1 at ¶¶ 53–56.) To obtain the equitable remedy of recission, a plaintiff must allege that (1) there was a "mutual mistake regarding a basic assumption underlying the contract" and (2) the contract did not allocate the risk of mistake to the plaintiff. *Rawson v. UMLIC VP, L.L.C.*, 933 So.2d 1206, 1210 (Fla. 1st DCA 2006). A party bears the risk of mistake where: (i) the risk is allocated to that party by the contract, (ii) at the time the contract is made, the party knows of its limited knowledge but treats such limited knowledge as

---

[5] The court in *Berry* noted that a claim for money had and received could be alleged, notwithstanding the existence of an express contract, if the plaintiff alleged "some fraud or imposition through which the money was obtained." *Berry*, 497 F. Supp. 2d at 1370. As discussed above, Francois failed to state a claim for fraud, and therefore Francois cannot state a claim for money had and received on the basis of fraud.

sufficient, or (iii) the risk is otherwise allocated to the party by the court. *See id.* (citing Restatement (Second) of Contracts § 154 (1979)). And as noted above, the Plaintiff must satisfy Rule 9(b)'s heightened pleading standard when alleging mutual mistake. *See Eaton v. Onewest Bank, FSB*, No. 8:12-cv-2074-T-EAJ, 2013 WL 12156429, at *3 (S.D. Fla. Feb. 15, 2013) (Jenkins, M.J.).

Here, Francois has not adequately alleged recission. First, Francois fails to allege a mutual mistake. Francois alleges that he was mistaken as to the ownership of the vessel, but he has not pled that such mistake was mutual. In conclusory allegations, Francois asserts that "all parties apparently believed that" ATM Shipping was the owner of the vessel. (ECF No. 1-1 at ¶ 55.) While allegations concerning a party's knowledge "may be alleged generally," *see* Fed. R. Civ. P. 9(b), such bare allegations do not withstand Rule 9(b). Francois makes no allegations of fact as to how or why the Defendants believed that ATM Shipping was the owner of the vessel.

In any event, Francois's claim is also barred as the contract allocated the risk to him. The contract, as set forth in the Addendum, plainly stated that the vessel was sold "as is, where is, in its current state and condition" and that the vessel "has no warranty either expressed or implied." (ECF No. 13-2.) Courts have recognized that property sold "as is" without any warranties "clearly and unambiguously allocate[] the risk" to the purchaser. *Rawson*, 933 So.2d at 1212. Therefore, Francois has not adequately stated a claim for rescission based on mutual mistake.

### 4. Conclusion

For the reasons stated above, the Court **grants** the Defendants' motion to dismiss (**ECF No. 13**) and dismisses Francois's claims against the Defendants **without prejudice**. Moreover, while Francois requested leave to amend if the Court granted the motion to dismiss (ECF No. 16 at 12), such request is improper and denied. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 902–03 (11th Cir. 2020); *see also Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").

The Clerk is directed to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered** in Miami, Florida, on September 30, 2021.

_____
Robert N. Scola, Jr.
United States District Judge